# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-KA-01754-SCT

*ANDRE ANTONIO FAIRLEY a/k/a ANDRE*
*FAIRLEY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/14/2017 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| TRIAL COURT ATTORNEYS: | JIM L. DAVIS, III |
| | WILLIAM CROSBY PARKER |
| | CHRISTOPHER DEON CARTER |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| | ANDRE A. FAIRLEY (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/02/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, C.J., MAXWELL AND BEAM, JJ.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.    Andre Fairley was indicted by a Harrison County grand jury for one count of possessing two or more grams, but less than ten grams of cocaine with intent to distribute, and one count of possessing more than thirty grams, but less than one kilogram, of synthetic cannabinoid, with intent to distribute.  Following a jury trial at which Fairley represented himself with the aid of standby counsel, Fairley was convicted of both counts.

¶2.     The trial court sentenced Fairley, a habitual offender, to twenty years for count one and five years for count two, with the sentences to be served day for day and concurrently. Fairley appeals both his convictions and sentences through appellate counsel[1] and pro se, claiming numerous assignments of error.[2] Finding no reversible error, we affirm Fairley's convictions and sentences.

**FACTS**

¶3.     On May 6, 2015, federal agents with Drug Enforcement Agency (DEA) were patrolling neighborhoods in Gulfport, Mississippi, during the agency's "Violent Tracker Initiative." Agents Brian Norton, Toby Schwartz, Raphael Bailey, and Justin McLauren were dressed in full uniform and were traveling in an unmarked vehicle.

¶4.     The agents stopped Fairley after he failed to stop at a stop sign. Agent Norton approached Fairley, who was in the driver's seat of his minivan. A passenger, Jermaine Jackson, was riding in the vehicle with Fairley.

¶5.     When Agent Norton approached, he told Fairley why they had stopped him and asked for Fairley's driver's license and proof of insurance. Agent Norton testified that Fairley appeared nervous but that he was compliant. He said that Fairley was sweating, that his fingers were trembling, and that he was stuttering.

---

[1] Fairley's appellate counsel, Michael Crosby, entered an appearance after the judgment of conviction was entered, and he represented Fairley at the sentencing hearing.

[2] Fairley also filed a motion to amend his pro se brief, which we grant.

2

¶6.     Fairley first handed Agent Norton his TWIC[3] card rather than his driver's license. Fairley recognized his mistake and gave Agent Norton his driver's license. Fairley did not have proof of insurance. The vehicle was registered in Fairley's name.

¶7.     Agent Norton asked Fairley to step to the back of his vehicle, and Fairley complied. When Fairley exited the vehicle, Agent Norton patted him down for weapons. Agent Norton asked Fairley if there were any illegal drugs or weapons on him or in his vehicle. Fairley replied, "No guns." Agent Norton again asked whether Fairley had any drugs, and Fairley said, "I have no guns in the vehicle."

¶8.     According to Agent Norton, these responses from Fairley prompted Norton to ask for Fairley's consent to search the vehicle. Fairley consented and said, "No problem, I don't have any guns."

¶9.     When Agent Norton searched Fairley's vehicle, he opened a sunglasses case and found a clear plastic bag with ten individual bags of a powder substance that Agent Norton believed was cocaine. Agent Norton next found a bag in the vehicle's back seat that contained a large amount of what he believed was "spice," or synthetic marijuana.

¶10.    Marie Prince, a forensic chemist with the DEA, testified that she tested both substances and confirmed that they contained 2.3 grams of cocaine and 668.5 grams of synthetic cannabinoids, "AB-FUBINACA."

---

[3] Transportation Worker Identification Credential (TWIC) cards are required by the Maritime Transportation Security Act for workers who need access to secure areas of the nation's maritime facilities and vessels. 46 U.S.C.A. § 70105 (West 2016).

¶11.   After discovering the drugs, Agent Norton placed Fairley and Jackson under arrest, and he advised them of their *Miranda* rights.[4] Fairley said, "Let the man go. They're mine. It's mine." Agent Norton said that Fairley clarified at the scene of the arrest that the cocaine was his, and he asked Agent Norton to let Jackson go because Jackson had nothing to do with the drugs. Agent Norton said he learned that Jackson was on probation, so he thought Fairley might be taking up for him. When Agent Norton asked Fairley more details about the cocaine, Fairley described the cocaine and its location.

¶12.   The agents transported Fairley to the Gulfport Police Department, where Agent Norton and Agent Schwartz interviewed Fairley. During the interview, Fairley asked Agent Norton how he could go home that night. Agent Norton explained to Fairley that he and Agent Schwartz were with the DEA and that they were merely assisting the Gulfport Police Department. Agent Norton, however, told Fairley that if he provided some information, his cooperation might be taken into consideration.

¶13.   According to trial testimony, Fairley maintained throughout the interview that the drugs were his. Fairley said that, because he had been laid off from his offshore job for nine months, he had been supplementing his income by selling cocaine. He said that, every week during those nine months, he would purchase half an ounce of cocaine, repackage it in units of either two-tenths or four-tenths of a gram, and sell the units for either twenty dollars or forty dollars.

---

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶14.    As to the synthetic marijuana, Fairley purportedly told the agents that he had loaned a friend some money to pay his rent.  When the friend could not repay the money, the friend gave Fairley some spice instead.  Fairley said that he had been looking for someone who could sell the spice but that he was having trouble finding a seller.

¶15.    According to the agents, Fairley refused to name his suppliers.  Agent Norton said that Fairley wanted a guarantee that he would be released in exchange for his cooperation.  When Agent Norton said he could not guarantee anything, Fairley ended the interview.

¶16.    Agent Norton testified that he used his personal recorder to record the interview with Fairley.  But because a number of people were arrested during the DEA's Violent Tracker Initiative, he inadvertently taped over Fairley's interview.

¶17.    Agent Schwartz confirmed Agent Norton's account of what happened.  Both agents testified that as a matter of DEA policy, all DEA interviews are conducted with two officers.  This policy exists to protect the facts and to ensure that the interviewee's statements are not misinterpreted or misremembered.  Agent Schwartz's account of Fairley's interview was the same as Agent Norton's; Agent Schwartz testified that taping over Fairley's interview had been accidental.

¶18.    Fairley represented himself throughout trial.  He called no witnesses and did not testify.  Fairley cross-examined Agent Norton and Agent Schwartz about the evidence in the case.  Specifically, Fairley questioned the agents about an individual named Willie Lee Keller.

¶19.   The agents testified that "Willie Lee Keller" was the file name for all of the arrests during the Violent Tracker Initiative.  Agent Adam Gibbons worked for the Gulfport Police Department but was assigned to the DEA task force.  Agent Gibbons explained that Keller was a cocaine dealer who had been investigated by the task force since 2011.  Agent Gibbons described the Keller file as a "filing cabinet" with many folders.  "Andre Fairley [was] a folder in the Keller file."  Agent Schwartz described the file name as a "book with many chapters."

¶20.   All of the agents who testified said that Fairley was not being tried for any of Keller's actions.  They said that the file name should have been redacted from the documents associated with Fairley's case but that it inadvertently appeared on a number of pages in Fairley's file.

¶21.   Fairley also argued that none of the agents had seized the sunglasses case in which the cocaine was found.  Fairley claimed that the photographs that showed the drugs in his vehicle had been taken at the police department and not at the scene of the traffic stop, implying that the drugs had been planted.  Alternatively, Fairley implied that he was being prosecuted because he refused to work with the DEA agents.

¶22.   Norton testified that he did not seize the sunglasses case, because it lacked evidentiary value.  He said that the drugs were the only material evidence in the case.

¶23.   Agent Gibbons testified that the photographs were taken at the scene of the traffic stop, and he told the jury that he recognized a house in one of the photographs.  In response to a question asked by Fairley during cross-examination about a "parking line" depicted in

6

one of the photographs, Agent Gibbons said that the white line is a fog line or road line, not a parking-space line. Agent Gibbons said the parking-space lines at the Gulfport Police Department are yellow, not white.

¶24. In response to Fairley's suggestion that he was being set up or prosecuted because he refused to cooperate, Agent Schwartz said that Fairley was arrested because drugs were found in his vehicle after a routine traffic stop. The arrest was not personal, and Agent Schwartz did not know who Fairley was before that day.

¶25. When questioned about why Fairley was not issued a ticket for running a stop sign, Agent Norton testified that he did not issue a traffic citation because Fairley was compliant, and he did not want to "kick a horse while it's down." Agent Norton said that he had to have Fairley's vehicle moved to get it out of the roadway. He had two options: have the vehicle towed or have an agent drive it. Agent Norton said that Fairley consented to one of the agents driving the vehicle. Both Agent Schwartz and Agent Gibbons agreed that the decision not to issue a traffic citation was not unusual. Agent Gibbons also said that a suspect is less likely to cooperate later if they have to pay to get their car out of the impound lot.

¶26. The jury found Fairley guilty of possessing cocaine and synthetic marijuana with intent to distribute. This appeal followed.

## DISCUSSION

I.      **Whether the trial court erred by admitting Rule 404(b) evidence without conducting an on-the-record Rule 403 analysis or providing a limiting jury instruction.**

7

¶27. At trial, the State sought to introduce evidence that Fairley had been convicted in 1994 of possession of marijuana with intent to distribute. Fairley objected, stating, "I object, Rule 403." The trial court responded, "Okay. I believe it's Rule 404." The State said, "Your Honor, do we need to have a hearing outside the presence of the jury?" The trial court replied, "No. Rule 404 allows the introduction of evidence of this type to prove intent or motive. So the objection is overruled."

¶28. Rule 404(b) of the Mississippi Rules of Evidence then provided,[5]

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶29. In *Swington v. State*, this Court reiterated that, "[e]vidence of prior involvement in the drug trade is admissible to prove intent to distribute." *Swington v. State*, 742 So. 2d 1106, 1111 (Miss. 1999) (citing *Holland v. State*, 656 So. 2d 1192, 1196 (Miss. 1995)). This includes evidence of a prior conviction similar to the crime charged. *Id.*

¶30. *Swington* explained,

> Prior convictions or wrongful acts may not imply that the defendant is the type of person likely to commit the crime charged. *Jenkins v. State*, 507 So. 2d 89, 92 (Miss. 1987). However, such evidence may be admitted for other evidentiary purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident pursuant to M.R.E. 404(b). *See Robinson v. State*, 497 So. 2d 440, 442 (Miss. 1986). In *Smith*, 656 So. 2d at 99, this Court held that "evidence of prior acts offered to show intent to distribute is not barred by M.R.E. 404 and is properly

---

[5] Rule 404(b) was amended in 2016 as part of the general restyling of the evidence rules.

admissible if it passes muster under M.R.E. 403 and is accompanied by a proper limiting instruction."

*Swington*, 742 So. 2d at 1112.

¶31. "To be sure, [however,] evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403," and the trial court is required "to consider whether its probative value on the issues of motive, opportunity and intent [are] substantially outweighed by the danger of unfair prejudice." *Hoops v. State*, 681 So. 2d 521, 530-31 (Miss. 1996) (quoting *Watts v. State*, 635 So. 2d 1364, 1368 (Miss. 1994)). And, "while a judge's on-the-record analysis is recommended . . . , the lack of such analysis is harmless unless we deem the evidence to be patently prejudicial." *Jones v. State*, 920 So. 2d 465, 476 (Miss. 2006).

¶32. According to the record, Fairley told the jury during opening statements that he had been framed because he "wouldn't be a snitch for the DEA." Fairley said the State's case against him was based upon "perjured, falsified, and redacted documents that they indicted [him] with." And the "charging document" in the case was actually for "a guy name Willie Lee Keller." Fairley also indicated that any assertion by the DEA that he (Fairley) had purportedly told them that the spice belonged to Jackson and that the cocaine belonged to him (Fairley), was false. Fairley said that he instead told the officers that, "Whatever you find, guns, drugs, whatever, give it all to me, let my friend go. He [has] four years over top of his head. I can stand the charge because I ha[ven't] been in trouble in 17 years."

¶33. During cross-examination, Fairley asked Agent Norton why they did not impound his vehicle, given the amount of drugs allegedly found inside it and given his (Fairley's) background. And Fairley questioned Agent Norton's testimony that Fairley admitted to them

that he had purchased the cocaine to sell it and that he had been looking to deliver the spice to someone else. Fairley also attempted to advance the theory that the drugs may have been planted by the agents by suggesting that the photographs purportedly taken of the drugs at the scene of the traffic stop actually had been taken later at the police station. Fairley further attempted to create the impression that the real culprit in the matter was Willie Lee Keller.

¶34. Based upon the foregoing, the State's prior-conviction evidence was relevant to Fairley's knowledge of the drugs' presence, his intent to distribute the drugs, and the absence of mistake or accident. And by overruling Fairley's Rule 403 objection to the prior-conviction evidence, the trial court perhaps had determined that its probative value exceeded any unfair prejudice to Fairley, given the inferences and claims raised by Fairley during opening statements and cross-examination. In any event, however, we agree with Presiding Justice Kitchens that Fairley properly made (or attempted to make) a Rule 403 objection with regard to the prior-conviction evidence, and the trial court should have ruled or responded to it accordingly. *See* ***Jones***, 920 So. 2d at 476. But any error on the part of the trial court in not doing so was harmless. ***Id.***

¶35. Again, Fairley told the jury that the evidence would show he was framed because he would not be a "snitch" for the DEA. He insinuated that the drugs were planted in his vehicle by the agents after they drove his vehicle to the police station from the scene of the stop. And he disputed having told the agents that he had purchased the cocaine to sell it and that he had sought a seller for the spice.

¶36. Further, this Court has held that evidence of other crimes may be admissible to tell the complete story. *Palmer v. State*, 939 So. 2d 792, 795 (Miss. 2005). Fairley mentioned the fact of his past "trouble" and his having a "background." And he used that to try to sow doubt in the jury's mind. In attempting to imply that the agents had planted the drugs, Fairley questioned why his vehicle was not impounded, given the fact of his background and the amount of drugs allegedly found in it. Fairley also tried to suggest his innocence by submitting that, if indeed he was guilty of the crimes for which he had been accused, then why would he not cooperate with the authorities, particularly given his past trouble? Accordingly, evidence of Fairley's prior conviction provided the jury a more complete picture of factual circumstances introduced by Fairley.

¶37. Lastly, contrary to Fairley's claim on appeal, the trial court submitted a limiting instruction to the jury. Jury instruction S-6 stated,

> The Court instructs the Jury that any evidence of prior bad acts or crimes of the defendant may be considered solely for the purpose of determining the defendant's intent or knowledge in this case. If the defendant has committed bad acts or crimes, they are not evidence corroborating or suggesting the defendant is guilty of the crime charged in this case.

¶38. For these reasons, we find no merit to this issue.

**II.    Whether the trial court erred by not granting a mistrial on its own motion after Agent Schwartz testified about Fairley's habitual-offender status.**

¶39. Before trial, the State filed a motion in limine to prohibit Fairley from mentioning his potential sentence. Fairley objected and argued that it was not fair that while he faced enhanced sentencing and was subject to being sentenced as a habitual offender, he could not

11

mention facts relating to sentencing at trial. The trial court ruled that Fairley would not be allowed to mention any potential sentence during the guilt phase at trial. Fairley argued that this was an attempt to conceal those facts. The trial court explained, however, that facts related to sentencing were not relevant during the guilt phase.

¶40.   When Fairley cross-examined Agent Schwartz, the following exchange occurred:

Fairley:      Now, again, Norton also stated that I offered to work with you guys. My question is this: Why if I offered to work with you guys am I here today looking at you guys?

The State:    Your Honor, I'm going to object. Now it's asking for speculation of why this individual, what he was thinking in his question to Mr. Schwartz. Why he is acting the way he's acting. It's completely improper, Your Honor.

The Court:    All right. I think he said why is he here if he was asking them about working with the police, and I think this witness can answer that question.

Schwartz:     Sure. It doesn't make sense why you're here because you have a lot to lose. From what I understand, you're a habitual offender, if I understand that correctly.

The Court:    Wait, wait, wait. Don't talk about anything - -

Schwartz:     He asked.

The Court:    - - about that.

Schwartz:     Yes, sir.

The Court:    All right. Go on to another question, Mr. Fairley.

Schwartz:     It's probably not a good question to ask.

Fairley:      That's a great question to ask because I really want to know that. Officer Norton stated the same thing. And you stated that y'all keep it to the narrative. So I really wanted to know if I came to

12

> you with that type of offer I shouldn't be in this situation. I just need the jury to know that, I wouldn't be in this if I came to you with that offer. Y'all came to me with that offer.

The Court: All right. That's an illegal question.

Fairley: I'm sorry, again, Your Honor. It's hard to - -

The Court: So I'm going to sustain the objection to that.

¶41. Fairley argues for the first time on appeal that the habitual-offender comment by Agent Schwartz constituted reversible plain error. We disagree.

¶42. The comment regarding Fairley's habitual-offender status came from Fairley's question to Agent Schwartz. Fairley did not object to it, and he admittedly wanted the jury to hear it. "A defendant cannot complain on appeal of alleged errors invited or induced by himself." *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1998) (citing *Davis v. State*, 472 So. 2d 428, 432 (Miss. 1985)). Accordingly, this issue is without merit.

### III. Whether the trial court erred by allowing character evidence of witnesses to be admitted.

¶43. Fairley argues for the first time on appeal that Rule 608 of the Mississippi Rules of Evidence was violated because witnesses gave specific examples concerning other witnesses' reputations for truthfulness. We find that the issue is waived because Fairley did not object to any such testimony when it was presented at trial. *See Rubenstein v. State*, 941 So. 2d 735, 752 (Miss. 2006) (Failure to object to improper questioning waives the error.).

### IV. Whether the State improperly commented on Fairley's right not to testify.

13

¶44. For the first time on appeal, Fairley claims the State drew the jury's attention to his failure to testify at trial with the following comment, which was made during closing argument:

> These are individuals doing their job, doing what we want as far as coming in and assisting our local law enforcement, and they have to take this witness stand and they're subject to cross-examination, subjected to being called liars. See, because that's what it comes down to. Who do you believe, right? We've knocked down every one of these distractions and it comes down to who you believe.

¶45. Fairley did not object to this argument at trial; therefore, his claim on appeal is considered waived. *See Evans v. State*, 226 So. 3d 1, 31 (Miss. 2017). Procedural bar notwithstanding, this assignment of error is without merit.

¶46. Attorneys are given wide latitude in making closing arguments. As discussed in the previous issue, Fairley challenged the credibility and truthfulness of the State's witnesses during his cross-examinations. The State's closing argument responded. This was fair and proper, and it did not directly or indirectly bring attention to the fact that Fairley had exercised his constitutional right not to testify.

V.      **Whether the trial court erred in accepting Agent Schwartz as an expert witness and in failing to instruct the jury regarding expert testimony.**

¶47. For the first time on appeal, Fairley claims the State committed a discovery violation by failing to submit notice of its intent to call an expert witness at trial. Also, for the first time on appeal, Fairley claims the trial court and Fairley's standby counsel failed to present a limiting instruction regarding the consideration of expert testimony.

14

¶48. This assignment of error is waived because Fairley did not object to this testimony at trial. Procedural bar notwithstanding, this issue is without merit.

¶49. As the State points out, prior to trial, the State submitted a witness-disclosure list. It contained asterisks by the names of people whom the State expected to testify as expert witnesses. Agent Norton and Agent Bailey were expected to testify as experts in the field of narcotics. And Marie Price was expected to testify as an expert in the field of drug and chemical analysis. An asterisk was placed by Agent Schwartz's name, although his name was not mentioned in the footnote denoting which witnesses were expected to testify as experts. The State contends this was a scrivener's error.

¶50. Nevertheless, when Agent Schwartz was tendered at trial as an expert in the field of drug investigations and drug trafficking, Fairley did not object. Therefore, Fairley cannot now be heard to complain about a discovery violation. *See Brewer v. State*, 725 So. 2d 106, 121 (Miss. 1998).

¶51. As to Fairley's claim that no limiting instruction about the consideration of expert testimony was provided, the record shows otherwise. The trial court submitted a general instruction, which thoroughly instructed the jury how such testimony should be considered. Instruction C-8 stated,

> The rules of evidence provide that where scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill[,] experience[,] training or education, may testify and state his opinion concerning such matters. You will recall that several individuals have testified as experts in this case either in person or by deposition. You should consider each expert opinion received in evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an

15

expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence, then you may disregard the opinion entirely.

**VI.** **Whether the trial court erred in instructing the jury through Jury Instructions S-8, S-9, and S-10.**

¶52.    Fairley claims the following instructions granted by the trial court for the State constituted impermissible comments on the evidence:

S-8:    The Court instructs the Jury that the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

S-9:    The Court instructs the Jury that during a lawful traffic stop an officer may order a passenger out of the car as a precautionary measure[.]

S-10:   The Court instructs the Jury that there is no requirement that an officer issue a citation for the predicate traffic violation to have a valid traffic stop.

¶53.    No objection was made at trial to Instructions S-8 and S-9. While standby counsel objected to Instruction S-10, counsel did not state his reason for the objection. Therefore, this issue is waived. *See Morgan v. State*, 741 So. 2d 246, 253 (Miss. 1999) ("In order to preserve a jury instruction issue on appeal, a party must make a specific objection to the proposed instruction in order to allow the lower court to consider the issue." (citing *Watson v. State*, 483 So. 2d 1326, 1329 (Miss. 1986))).

¶54.    Procedural bar notwithstanding, we find no reversible error with these instructions. No instruction touched on the question the jury had to decide—whether Fairley was guilty of possession of a controlled substance with intent to distribute. Nor did the instructions encourage the jury to assign weight to any of the evidence. Each instruction simply informed

16

the jury of the law as it pertained to the evidence presented at trial. Accordingly, this issue is without merit.

## VII. Whether Fairley received ineffective assistance of counsel.

¶55. Fairley claims that standby counsel rendered ineffective assistance of counsel by failing to submit a spoilation instruction regarding the lost recording of his interview. Fairley also claims the trial judge refused to dismiss the charges in this case despite a two-year delay, primarily because Fairley's counsel at the time signed off on ten continuances; but no hearing was conducted regarding ineffective assistance of counsel. Fairley submits that this issue should be preserved for a post-conviction relief hearing.

¶56. The State submits that both claims are without merit. First, the State argues that self-representation generally precludes a claim that standby counsel rendered ineffective assistance. *Estelle v. State*, 558 So. 2d 843, 847 (Miss. 1990). This is because when the defendant waives the right to counsel and represents himself, standby counsel lacks authority or control to render ineffective assistance of counsel. *Id.* The State, however, also submits that because Fairley utilized counsel's assistance when it came to presenting jury instructions, Fairley's ineffective-assistance-of-counsel claim may not be automatically barred. Regardless, though, the State maintains that this claim is meritless.

¶57. In his pro se brief, Fairley claims that James Davis, whom Fairley had hired to represent him, rendered ineffective assistance of counsel for filing a "fraudulent suppression motion," for allowing the State to request an amendment to Fairley's indictment, for threatening and coercing Fairley verbally to enter into a plea agreement with the prosecution,

17

for failing to complete discovery, and for failing to adequately represent Fairley at a critical motion hearing. Fairley submits, however, that these claims are more appropriate in a post-conviction relief proceeding, and he requests that he be allowed to preserve these claims for such a proceeding. Fairley cites Rule 22(b) of the Mississippi Rules of Appellate Procedure.

¶58. "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that his attorney's performance was deficient, and that the deficiency was so substantial as to deprive the defendant of a fair trial." *Dartez v. State*, 177 So. 3d 420, 423 (Miss. 2015) (citing *Holly v. State*, 716 So. 2d 979, 989 (Miss. 1998)); *see also* *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

¶59. As to the spoilation claim, we agree with the State. In order "to be entitled to a spoilation instruction there must be evidence of intentional destruction of the evidence." *Snyder v. State*, 174 So. 3d 331, 337-38 (Miss. Ct. App. 2015) (emphasis omitted) (citing *Hardy v. State*, 137 So. 3d 289, 303 (Miss. 2014)). "Without evidence of intentional destruction, there is no presumption the unpreserved evidence would have been favorable." *Id.* (citing *Johnston v. State*, 618 So. 2d 90, 92 (Miss. 1993)). Here, no evidence was presented at trial that the audio recording of Fairley's interview was purposefully taped over or erased in bad faith. Therefore, Fairley was not entitled to a spoilation instruction, and the claim fails under both *Strickland* prongs.

¶60. As to the speedy-trial claim, Fairley presented his claim to the trial court prior to trial. Fairley claimed that all the continuances were sought because the State had not completed discovery. The trial court, however, found (and the record shows) that twelve continuance

18

motions were filed by Fairley's former counsel, James Davis, on behalf of the defense. Ten of the motions indicated that the continuance was necessary to complete discovery for the defense. The other two motions indicated that the continuance was necessary because defense counsel was not available for trial on the scheduled dates.

¶61. The trial court denied Fairley's speedy-trial claim, finding that Fairley was represented by counsel who signed the motions on Fairley's behalf. The trial court told Fairley that he may have had an ineffective-assistance-of-counsel claim against his former counsel if, as Fairley claimed, he had instructed counsel otherwise. But the court explained that such a claim would be a matter for post-conviction relief in the event Fairley was convicted.

¶62. We agree with the trial court that this claim cannot be adequately addressed on direct appeal, because it involves alleged facts that exist outside the record. *See Archer v. State*, 986 So. 2d 951, 955 (Miss. 2008) (explaining that ineffective-assistance claims, generally, are more appropriately brought during post-conviction relief proceedings because a reviewing court is limited to the trial court record on direct appeal). Therefore, Fairley's ineffective-assistance-of-counsel claim with regard to his speedy-trial rights is dismissed without prejudice so that Fairley, if he chooses, may assert this claim for a future post-conviction relief petition. *See Read v. State*, 430 So. 2d 832, 837 (Miss. 1983).

¶63. We also agree with Fairley that the other ineffective-assistance-of-counsel claims raised in his pro se brief cannot be addressed on direct appeal because they involve alleged facts not apparent from the appellate record. Accordingly, those claims also are dismissed without prejudice.

19

**VIII. Whether the trial court erred in sentencing Fairley as a habitual offender.**

¶64.     Fairley claims the trial court committed reversible error by refusing to consider evidence in support of a sentence less than the maximum and by failing to consider *Clowers v. State*, 522 So. 2d 762 (Miss. 1988).   At the sentencing hearing, Fairley's counsel argued that *Clowers* supported his argument that the trial court had discretion in sentencing and that the trial court should sentence Fairley to a term less than the maximum sentence, despite Fairley's habitual-offender status.

¶65.     The trial court held that because Fairley was a habitual offender, it would not deviate from the maximum sentence.  The trial court said,

> I'm tired of getting written up about it so I'm not going to change - - I mean, I'm not going to deviate from the maximum sentence because that's what the statute says, that upon conviction that a defendant shall be sentenced to the maximum sentence in the case.

¶66.     In *Clowers*, the defendant, a habitual offender, had been convicted of forging a $250 check.  *Clowers*, 522 So. 2d at 763.  As a habitual offender, the defendant was subject to the mandatory maximum sentence of fifteen years without parole.  *Id.*   But the trial court imposed a sentence of less than fifteen years because it determined that the mandatory maximum sentence was disproportionate to the crime.  *Id.*   On cross-appeal, this Court affirmed the trial court's sentence.  *Id.* at 765. The *Clowers* Court said,

> The fact that the trial judge lacks sentencing discretion does not necessarily mean the prescribed sentence meets federal constitutional proportionality requirements. Notwithstanding [Mississippi Code Section] 99-19-81, the trial court has authority to review a particular sentence in light of constitutional

20

principles of proportionality as expressed in *Solem v. Helm*[, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983)].[6]

*Clowers*, 522 So. 2d at 765.

¶67.   *Clowers*, however, also expressed that its holding in the case was not the rule, but the exception. *Id. Clowers* explained that it was not establishing a litmus test for proportionality and that "outside the context of capital punishment, successful challenges to the proportionality of a particular sentence [will be] exceedingly rare." *Id.* (alteration in original) (emphasis omitted) (quoting *Solem*, 463 U.S. at 289-90).

¶68.   In *Hoops v. State*, this Court recognized that the United States Supreme Court overruled *Solem* in *Harmelin v. Michigan*, 501 U.S. 957, 965-66, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991), "to the extent that it found a guarantee in the proportionality in the Eighth Amendment." *Hoops v. State*, 681 So. 2d 521, 538 (Miss. 1996) (citing *Smallwood v. Johnson*, 73 F.3d 1343, 1346 n.4 (5th Cir. 1996)). *Hoops* noted that *Solem* is applicable only if a threshold comparison of the crime committed with the sentence imposed leads to an inference of "gross disproportionality." *Hoops*, 681 So. 2d at 538 (quoting *Smallwood*, 73 F.3d at 1347).

¶69.   No such showing was made at Fairley's sentencing, and his sentences raise no inference of gross dispropotionality. *See Tate v. State*, 912 So. 2d 919, 934 (Miss. 2005)

---

[6] In *Solem*, the United States Supreme Court held, under the Eighth Amendment of United States Constitution, that a criminal sentence must not be disproportionate to the crime for which the defendant is being sentenced. *Solem*, 463 U.S. at 290. The Supreme Court set forth objective factors to guide proportionality analysis in each case: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 292.

(finding sixty-year drug-related sentence, "[t]hough certainly harsh," was "not 'grossly disproportionate' to [the] crime"). The record shows that although Fairley was eligible for sentencing enhancement as a prior drug offender, the trial court declined to impose an enhanced sentence. *See* Miss. Code Ann. § 41-29-147 (Rev. 2018). The trial court noted that the only decision it had left to make was whether to order Fairley's sentences to run concurrently or consecutively. In its discretion, the trial court ordered the former.

¶70. This issue is without merit.

### IX. Whether the trial court erred by denying Fairley's request for bond pending appeal.

¶71. Fairley's appellate counsel claims on appeal that the trial court's refusal to release Fairley from custody pending appeal, despite Fairley's overwhelming qualification for such, denied Fairley his statutory and constitutional rights. He contends that when the trial court was asked to consider Section 99-35-115, it refused to consider bail, despite large community support, only because the defendant was sentenced as a habitual offender. Fairley also has filed a pro se petition with this Court for writ of habeas corpus, asserting the same claim.

¶72. As this Court has explained, "[B]ail is a fundamental, constitutionally protected right." *Benson v. State*, 551 So. 2d 188, 194 (Miss. 1989) (quoting *Resolute Ins. Co. v. State*, 233 So. 2d 788, 789 (Miss. 1970)). That right, however, is not automatic, and the decision to grant or deny bail "rests in the sound discretion of the judicial officer." *Id.* (quoting *Lee v. Lawson*, 375 So. 2d 1019, 1024 (Miss. 1979)). "If bail [pending appeal] is denied, the judicial officer shall place the reasons for such denial of record in the case." Miss. Code Ann. § 99-35-115(2)(b) (Rev. 2015).

¶73. On the other hand, "denial of bail is not a ground for reversal of the judgment [of conviction or sentence] rendered against the defendant." **Benson**, 551 So. 2d at 195. And, as a matter of course, actions challenging the trial court's denial of bail typically are brought through habeas corpus procedures. **Id.**

¶74. As the State points out, the trial court followed the statutory requirements of Section 99-35-115 in evaluating Fairley's request and stating for the record its reason for denying the request. The trial court found that Fairley is a repeat offender of the crimes for which he was convicted, and "there's no way to prohibit that kind of activity if he were to remain on bond" pending appeal.

¶75. The record evidence supports the trial court's finding, and we cannot say that the trial court abused its discretion in denying Fairley request for bail. This issue is without merit, and we deny Fairley's motion in this Court.

> **X.** **Whether the trial court erred by allowing Fairley's self-representation.**

¶76. In his pro se brief, Fairley claims the trial court committed reversible error by (1) allowing Fairley to proceed pro se without providing adequate warnings about the dangers and disadvantages of self-representation as required under **Faretta v. California**, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); and (2) failing to inquire into numerous conflicts of interest that existed between Fairley and his former counsel, Davis.

¶77. Fairley's trial occurred on June 27 and 28, 2017. Fairley remained out of jail on bond until his conviction. Trial previously was scheduled for May 8, 2017, after numerous

23

continuances had been granted by the trial court. On May 8, before trial was set to begin that day, Fairley informed the trial judge that he wanted to fire Davis.

¶78. The judge initially told Fairley no, instructing Fairley that he "can't just come in on the day of trial and fire your lawyer." The judge then relented somewhat after learning that Davis was not court appointed; also, another case on the court's docket was scheduled to begin the next day, May 9. The trial judge told Fairley his case would be continued if the other case went to trial.

¶79. The judge then asked Fairley when he expected to hire another attorney. Fairley told the judge that he had been talking to NAACP and ACLU. The judge then informed Fairley that the court was not going to "wait around" until Fairley found new counsel. He told Fairley that he was going to put Fairley's case back on the docket and that it would be "tried as soon as we can get to it."

¶80. The next day, May 9, the trial judge informed Fairley that his case would have to be continued to May 15, 2017, due to the other case on the court's docket. The judge told Fairley that he would allow Davis to withdraw from the case and that Fairley could retain other counsel or represent himself, because he had the right to either. Fairley responded, "Okay."

¶81. The following week, on May 15, Fairley appeared before the judge without counsel. The judge asked Fairley if he had retained new counsel. Fairley told the judge, "No. I don't want one." Fairley said he was ready to "hear the case" himself. The judge informed Fairley he would have to conduct a hearing to make Fairley aware of "all that's involved in trying

24

the case by yourself." The judge then asked the parties when they would be available for trial. The State requested June 26, 2017. Fairley, however, informed the judge that he would not be available that day because that was his mother's birthday, and his family had a celebration planned since his mother had died recently. The judge set the case for June 27, 2017.

¶82. During the May 15 hearing, the judge explained to Fairley that, even though he had the right to proceed pro se, doing so was unadvisable. The judge informed Fairley that he had the opportunity to hire another attorney and that if he did not have the money to hire an attorney, the court would appoint one. The judge explained to Fairley that he would not be given special treatment if he proceeded pro se. "The [c]ourt will not relax or disregard the rules of evidence, procedure or courtroom protocol for you, and you will have to conduct yourself within the same rules that lawyers do who have legal training." The judge told Fairley that statistics show proceeding in a case pro se "increases the likelihood of an adverse outcome of the case." And "self-representation is almost always unwise." The judge reiterated that Fairley would not receive special treatment and that Fairley "must follow all of the technical rules of substantive law, criminal procedure, and evidence in the making of motions, objections and presentation of the evidence, in jury selections and argument, even if you don't know what the rules are."

¶83. Fairley said he understood what the judge was saying, but he wanted to object for the record about proceeding pro se. Fairley said, "I want to hear the case myself. And I for the record will not be pro se because I am not a practicing lawyer or work for any law firm."

25

¶84. The judge responded as follows:

> Well, you're going to be classified as pro se. Pro se means representing yourself. And if you don't have a lawyer, you'll have to come in and the first thing we do is pick a jury by voir dire. The State gets to ask questions. You get to ask questions. After that, we choose - - you and the State choose 12 people to try the case.
>
> Then the case goes to trial, and you make opening statements, and then the State puts on its evidence. You get to cross-examine their witnesses. And then when the State rests, you get to put on your evidence and the State gets to cross-examine your witnesses. Then you make final argument to the jury. I read the jury the instructions of law that apply to the facts that they find, and then the jury is retired to consider its verdict.
>
> That's kind of how the procedure of the case will work. Okay?

¶85. Fairley indicated that he understood. The judge then informed Fairley that he would hear any pretrial motions.

¶86. On June 22, 2017, Fairley appeared in court and informed the judge he was not going to retain new counsel. The judge again cautioned Fairley about the dangers of self-representation. He reiterated that Fairley would not receive special treatment, and he again explained in general how trials are conducted under the rules, to which Fairley would be bound. Over Fairley's objection, the judge appointed Geoff Germany as standby counsel for Fairley.

¶87. Both our federal and state constitutions provide that every defendant has the right to conduct his or her own defense. *Grim v. State*, 102 So. 3d 1073, 1076 (Miss. 2012); *Howard v. State*, 697 So. 2d 415, 420 (Miss. 1997) (citing U.S. Const. amends. VI, XIV; Miss. Const. art. 3, § 26). A refusal to allow a defendant who voluntarily and intelligently elects to represent himself is a violation of his or her constitutional rights and requires

26

reversal. ***Gray v. State***, 351 So. 2d 1342, 1345 (Miss. 1977); *see also **Faretta***, 422 U.S. at 835.

¶88.    The procedure for evaluating a defendant's demand to represent himself previously was found in Rule 8.05 of the Uniform Rules of Circuit and County Court Practice:

> When the court learns that a defendant desires to act as his/her own attorney, the court shall on the record conduct an examination of the defendant to determine if the defendant knowingly and voluntarily desires to act as his/her own attorney. The court shall inform the defendant that:
>
> 1.  The defendant has a right to an attorney, and if the defendant cannot afford an attorney, the state will appoint one free of charge to the defendant to defend or assist the defendant in his/her defense.
>
> 2.  The defendant has the right to conduct the defense and that the defendant may elect to conduct the defense and allow whatever role (s)he desires to his/her attorney.
>
> 3.  The court will not relax or disregard the rules of evidence, procedure or courtroom protocol for the defendant and that the defendant will be bound by and have to conduct himself/herself within the same rules as an attorney, that these rules are not simple and that without legal advice his/her ability to defend himself/herself will be hampered.
>
> 4.  The right to proceed pro se usually increases the likelihood of a trial outcome unfavorable to the defendant.
>
> 5.  Other matters as the court deems appropriate.

URCCC 8.05.[7]

¶89.    Fairley claims on appeal that the trial court was aware that he was not "competent of law" to proceed pro se when, at the May 1, 2017, hearing, the trial judge "took issue" that

---

[7] The Mississippi Rules of Criminal Procedure replaced the Uniform Rules of Circuit and County Court Practice relating to criminal practice, effective July 1, 2017. *See* MRCrP 7.1(c) (waiver of right to counsel). At the time of Fairley's trial, Uniform Rule of Circuit and County Court Practice 8.05 was still in effect.

Fairley had neither the law-school education nor the years of experience to interpret the Constitution. At that point, Fairley says the trial judge should have stopped the proceedings and determined his competency to represent himself, because the judge was in the best position to see that he needed counsel. And, according to Fairley, the trial judge was obligated to protect his fundamental rights.

¶90. Based on our review of the record, no reason to conduct a Rule 8.05 colloquy at the May 1 hearing was apparent, because Fairley still was represented by Davis and gave no indication that he intended to fire Davis. Also, the judge's comment about Fairley's lack of legal education was in response to an argument Fairley had made about his speedy-trial rights.

¶91. As mentioned above, Fairley claimed that his attorney had signed off on a number of continuances without Fairley's consent. Fairley told the trial judge he did not think that the judge was "honor[ing] the Constitution on both ends of the spectrum . . . ." Fairley said "I've been raped of my rights."

¶92. The judge admonished Fairley, telling him that "you need to be careful how you say things because this is a court of law." Fairley said he understood and that all he was asking was "for the law to be passed and rendered according to the Constitution." The judge replied,

> I understand that's your interpretation of the Constitution. These three lawyers and myself have been through three years of law school and . . . have studied law and tried it now for 30 to 50 years. And so you have a right to your interpretation of the Constitution . . . and your case. But if I don't rule the way you think I should, you have a right to appeal after trial. You have a right to

28

appeal any decision that's rendered by a jury. I don't know what a jury is going to do. I don't know what the case is about. . . .

¶93. Again, Fairley made no mention to the judge at the May 1 hearing that he wanted to fire his attorney. Fairley first did so at the May 8 hearing. Then, at the May 15 hearing, when it became clear to the judge that Fairley refused to hire new counsel or accept court-appointed counsel if Fairley could not afford counsel, the judge conducted a Rule 8.05 colloquy. The judge did so again at the June 22 hearing to make sure Fairley knowingly and voluntarily intended to act as his own attorney.

¶94. The trial judge, in his discretion, appointed standby counsel for Fairley, over Fairley's objection. *See Faretta*, 422 U.S. at 834 n.46 ("Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused . . . .").

¶95. Based on the record, Fairley's claim that the trial court allowed him to proceed pro se without providing adequate warnings about the dangers and disadvantages of self-representation is incorrect. The trial judge made Fairley aware multiple times, and Fairley knowingly disregarded the judge's admonition "with eyes open" and proceeded to trial, representing himself. *Faretta*, 422 U.S. at 835 (quoting ***Adams v. United States ex rel. McCann***, 317 U.S. 269, 279, 63 S. Ct. 236, 87 L. Ed. 268 (1942)). Accordingly, this claim is without merit.

## CONCLUSION

¶96. Finding no reversible error, we affirm Fairley's convictions and sentences.

**AFFIRMED.**

29

**RANDOLPH, C.J., COLEMAN, MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J. KITCHENS, P.J., CONCURS IN PART AND IN RESULT WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J.**

**KING, PRESIDING JUSTICE, SPECIALLY CONCURRING:**

¶97. I agree with this Court's decision to affirm Andre Fairley's convictions and sentences. I write separately to express my concerns regarding the trial court's appointment of standby counsel the day before Fairley's criminal trial began.

¶98. The United States Supreme Court has recognized that the Sixth Amendment gives a defendant the right to conduct his own defense. *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975). However, courts may turn to "hybrid representation" to protect the defendant's right to counsel while also protecting his right to self-representation. *Metcalf v. State*, 629 So. 2d 558, 562 (Miss. 1993). The role of standby counsel "includes, among other things, the necessity of preparing as adequately as possible to assume a more active role in the trial, should the need arise." *Howard v. State*, 701 So. 2d 274, 285 (Miss. 1997), *abrogated on other grounds by Hearn v. State*, 3 So. 3d 772, 730 n.11 (Miss. 2008). It additionally includes the obligation "to provide the defendant with adequate assistance in accordance with the defendant's requests." *Hill v. State*, 134 So. 3d 721, 725 n.1 (Miss. 2014).

¶99. Here, the trial court appointed standby counsel on June 26, 2017, the day before Fairley's trial began. This inevitably left Fairley's standby counsel with inadequate time to become familiar with his case. The trial court recognized that standby counsel knew "nothing

30

about the case" and would not be allowed to cross-examine witnesses because "he knows nothing about the facts of the case," but the trial court stated also that counsel would be able to provide assistance on procedural issues. In my opinion, Fairley would have been better served had the trial court appointed standby counsel far enough in advance to allow counsel to adequately prepare should Fairley need him to assume a more active role.

¶100. The trial court had advance notice that Fairley did not fully understand the law and needed assistance despite his decision to defend himself. For example, during a hearing on May 1, 2017, Fairley asserted rights under the Uniform Commercial Code and requested that the court place a delegation-of-authority order into the record signed by either the president of the United States or the governor of Mississippi. At this point, if not before, the trial court was aware that Fairley could greatly benefit from standby counsel. As this Court previously has stated,

> the role of appointed counsel often becomes blurred when counsel is requested to remain and assist the defendant who wishes to carry out his own defense. However, if each party will zealously fulfill their role, we can ensure that the trial courts are not placed in such an unenviable position in terms of the number of errors or potential errors, while at the same time honor the right to counsel and ensure confidence in the reliability, fairness, and outcome of such trials.

*Howard*, 701 So. 2d at 286.

¶101. Because standby counsel was appointed the day before trial, he was unable to prepare, and he was unable to provide Fairley with adequate assistance. Such a late appointment rendered standby counsel virtually useless. Therefore, in my opinion, the trial court should

31

have appointed standby counsel far enough in advance to give counsel the opportunity to adequately prepare and to zealously fulfill his role as advisor.

**KITCHENS, P.J., JOINS THIS OPINION.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶102. With respect, I disagree with this Court's finding that no error occurred in the admission of Fairley's 1994 conviction for possession of marijuana with intent to distribute. The conviction undoubtedly was more prejudicial than probative, and nothing indicates that the trial court considered its admissibility under Mississippi Rule of Evidence 403, despite Fairley's explicit Rule 403 objection. The following constitutes the entirety of the discussion of the issue at the trial:

> [THE PROSECUTOR]: Your Honor, at this time we'd offer State's Exhibit 7 into evidence.
>
> THE COURT: All right. Objection?
>
> THE DEFENDANT: I object. I object, Rule 403.
>
> THE COURT: Okay. I believe it's rule 404.
>
> [THE PROSECUTOR]: Then, Your Honor, do we need to have a hearing outside the presence of the jury?
>
> THE COURT: No. Rule 404 allows the introduction of evidence of this type to prove intent or motive. So the objection is overruled.

¶103. Fairley argues that the trial court erred by admitting the prior conviction without performing the balancing analysis required by Rule 403. I agree. "[T]his Court has held that evidence . . . admissible under Rule 404(b) must be tested under Rule 403" before it is

admitted into evidence. *Tate v. State*, 912 So. 2d 919, 925 (Miss. 2005) (citing *Jenkins v. State*, 507 So. 2d 89, 93 (Miss. 1987), *abrogated by Pitchford v. State*, 45 So. 3d 216, 246 n.75 (Miss. 2010)). Regarding the balancing test under Rule 403, this Court has said that

> To be sure, evidence admissible under Rule 404(b) is also subject to the prejudice test of Rule 403; that is, even though the Circuit Court considered the evidence at issue admissible under Rule 404(b), it was still required by Rule 403 to consider whether its probative value on the issues of motive, opportunity and intent was substantially outweighed by the danger of unfair prejudice. In this sense Rule 403 is an ultimate filter through which all otherwise admissible evidence must pass.

*Hoops v. State*, 681 So. 2d 521, 530-31 (Miss. 1996) (quoting *Watts v. State*, 635 So. 2d 1364, 1368 (Miss. 1994)).

¶104.   Although we consistently have said that all evidence otherwise admissible must pass through the Rule 403 filter, our requirements for the level of fact finding under Rule 403 have fluctuated. In *Tate*, the trial transcript showed that the trial court had not considered Rule 403 before admitting Tate's prior convictions for sale of marijuana under Rule 404(b). *Tate*, 912 So. 2d at 925. As in this case, the trial judge never mentioned the word *prejudice*, and the judge's comments indicated a mistaken belief that this type of evidence always is admissible. *Id.* Finding error, we held that "[w]hile prior convictions which have been found relevant under M.R.E. 401, and which satisfy M.R.E. 404(b) may be potentially admissible to prove disposition, they may be allowed into evidence only after passing a Rule 403 balancing test, which must be conducted on the record." *Id.* at 926 (emphasis omitted) (citing *Holland v. State*, 656 So. 2d 1192, 1196-97 (Miss. 1995); *Jenkins*, 507 So. 2d at 89).

¶105.  The Court retreated from *Tate*'s strict requirement of on-the-record fact findings in *Jones v. State*, 920 So. 2d 465 (Miss. 2006). Jones argued that his conviction must be reversed because the trial court did not perform an on-the-record analysis under Rule 403. *Jones*, 920 So. 2d at 475. Without acknowledging *Tate*, we held that an on-the-record Rule 403 analysis is recommended, but not required. *Id.* at 476. We found that the lack of such analysis would be deemed harmless unless the evidence is "patently prejudicial." *Id.* Because the evidence at issue in *Jones* was not patently prejudicial and because the trial court's failure to conduct an on the record Rule 403 analysis did not affect the defendant's rights, the Court found no error. *Id.* We reaffirmed that reasoning in *Corrothers v. State* when we held that "[a] trial judge's failure to articulate Rule 403's 'magic words' does not create a presumption that the trial court did not consider the requirements of Rule 403 before admitting evidence." *Corrothers v. State*, 148 So. 3d 278, 310-11 (Miss. 2014) (citing *Tate v. State*, 20 So. 3d 623, 639 (Miss. 2009)).

¶106.  Here, as in *Tate*, 912 So. 2d at 925, the trial court's commentary strongly suggests that no Rule 403 analysis occurred. Fairley explicitly objected to the admission of the prior conviction under Rule 403. But rather than evaluating whether probative value of the prior conviction outweighed its prejudicial effect, as Fairley expressly requested, the trial court told him that the proper objection was under Rule 404, not Rule 403. Then, the trial court went on to say that Rule 404(b) allows such evidence to show intent or motive, "[s]o the objection is overruled." While this Court requires neither magic words nor explicit on-the-record balancing, nothing suggests that the trial court in Fairley's case actually weighed the

34

probative value of the 1994 conviction against its prejudicial effect as mandated by Rule 403. To the contrary, the transcript indicates that the trial court's decision was limited only to an analysis of admissibility under Rule 404(b). While this Court does not demand magic words, we should not assume blindly that every admissibility decision implicitly includes a Rule 403 analysis, especially when the trial transcript clearly indicates otherwise.

¶107. I would hold that the trial court erred by not considering Rule 403 at all, in spite of Fairley's proper Rule 403 objection. Further, I would find that Fairley's 1994 conviction was inadmissible, because it was more prejudicial than probative. Fairley was on trial for possession of two grams or more, but less than ten grams, of cocaine and possession of more than thirty grams, but less than one kilogram, of synthetic cannabinoids. The date of his crimes was May 6, 2015. The 1994 conviction was for possession of marijuana with intent to distribute. That conviction occurred twenty-one years before the crimes for which Fairley was on trial and involved different drugs. Due to the prior conviction's remoteness in time, and, more minimally, the fact that different drugs were involved, the prior conviction from 1994 was of scant relevance to Fairley's intent or motive on May 6, 2015. I would hold that the trial court erred by admitting the 1994 conviction, because it was more prejudicial than probative. But because the trial court gave a proper limiting instruction, restricting the jury from considering the 1994 conviction as evidence of guilt and because the error had little likelihood of changing the result of Fairley's trial, the admission of the conviction was harmless error. *See **Roberts v. State***, 234 So. 3d 1251, 1264 (Miss. 2017) (citing ***Chapman***

*v. California*, 386 U.S. 18, 22, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)). Therefore, I concur

with the majority's decision to affirm Fairley's convictions.

**KING, P.J., JOINS THIS OPINION.**