# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01377-SCT

*MELVIN POTTS a/k/a MELVIN JOSHUA POTTS*
*a/k/a MELVIN J. POTTS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/15/2015 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: W. DANIEL HINCHCLIFF |
| | GEORGE T. HOLMES |
| | MELVIN POTTS (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/08/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., COLEMAN AND BEAM, JJ.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Melvin Potts appeals his convictions of first-degree murder and motor-vehicle theft. arguing that the trial judge erred by  providing additional instructions to the jury, not declaring a mistrial when the jury stated it was deadlocked, and granting and refusing certain jury instructions.  Potts further argues that  insufficient evidence  supported his conviction, and that his conviction was against the overwhelming weight of the evidence.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. On May 21, 2014, Georgia Courtney received a phone call from Jackson State University informing her that her cousin—Dr. Garrick Shelton—had not shown up for work. Courtney went to Shelton's home, where she found him dead. The Madison Police Department investigated and developed Melvin Potts as a person of interest, after his mother's cell phone number appeared on Shelton's recent phone records.

¶3. Potts's mother told the police that Potts had used her cell phone and gave the police his address and description. The police were unable to locate Potts at his apartment but learned from neighbors that Potts had been seen with a large bandage on his hand, and that he had been driving a car that had broken down in front of a nearby apartment building.

¶4. Potts was located, arrested, and transported to the Madison Police Department. He was indicted for first-degree murder and motor-vehicle theft. At trial, Officer Jack David Williams testified that he found a knife on the floor of the bedroom where Shelton's body was located and a large bloodstain on the bed's comforter.

¶5. Rodney Erikson—captain of the Madison Police Department—testified that drops of blood were found on Shelton's carport as well as on and around a knife on the kitchen floor. He further testified that police found a bullet hole entering the wall of the dining room and a "projectile" by the dining room table. Erikson testified that when he entered the bedroom containing Shelton's body, he saw a pair of broken glasses laying on the floor. He also observed an area on the dresser where items appeared to be missing, a shell casing, and a

2

bloody knife with a broken tip. Erikson testified that Shelton's car and cell phone were missing from his home.

¶6.     Detective Jon Cooley testified that, when interviewed, Potts stated that he had met Shelton on a website called "Tagged" about a month before the killing. Potts told Cooley that Shelton had picked him up and they had gone to Shelton's home. Potts stated that he had been in the living room and Shelton had been in the kitchen when Shelton saw Potts had a gun. Potts told Cooley that Shelton had then grabbed a knife, left the kitchen, and told Potts to leave. According to Cooley, Potts told contradictory stories about how he had ended up in the bedroom. One story was that he had followed Shelton to the bedroom sometime after Shelton left. Another story was that Shelton had "shot" to the bedroom and Potts had "shot" after him.

¶7.     Cooley further testified that Potts had provided multiple stories to explain why he had stabbed Shelton. Potts first told Cooley that he had told Shelton he wanted to leave and Shelton "ran up on him." Cooley testified that Potts also said he had been afraid Shelton was going to call the police. Cooley told the jury that Potts later said he had panicked and shot Shelton and then stabbed him with the knife. Cooley further stated that at one point Potts said Shelton had cut him with the knife.

¶8.     Additionally, Cooley testified that Potts claimed to have shot Shelton in the chest, and he had stuck to this story after being told otherwise. He further stated that Potts had admitted he had taken Shelton's car, television, and game console. According to Cooley, Potts had

3

said he had taken the game console for his little brother. When Cooley asked Potts why he did not call 911, Potts said he had been worried about the history of the gun. Finally, Cooley testified that Potts had sold the gun that was used in the shooting.

¶9. On cross-examination, Cooley stated that there were times in the interview when Potts said he had gone to the door of Shelton's home as if to leave. Cooley also admitted that Potts consistently had said that he had shot Shelton only after Shelton cut him.

¶10. Erin Barnhart—the Deputy Chief Medical Examiner—testified that Shelton had been shot in the back, stabbed eighteen times, and died as a result of "sharp forced injuries." According to Barnhart, the eighteen knife wounds generally were on Shelton's head and arms. She stated that several of the wounds resulted in fractures to Shelton's cheekbone and skull, and one resulted in the transection of two arteries in his arm. Finally, Barnhart stated that she found a "metallic fragment adherent to [Shelton's] skull."

¶11. Joe Heflin—a forensic biologist for the Mississippi State Crime Lab—testified that blood found on the knife was "consistent with the [DNA] reference sample of Garrick Shelton." He further testified that the droplets of blood found outside Shelton's home "were consistent with the sample of . . . Potts."

¶12. Following the state's case-in-chief, Potts moved for a directed verdict, which was denied. Thereafter, he testified in his own defense. Potts testified that Shelton had picked him up in Jackson on May 21, 2014, and had brought him to his home in Madison County to engage in oral sex. According to Potts, Shelton saw that he had a firearm and became

4

uncomfortable. Thereafter, Shelton grabbed a knife from the kitchen and retreated to one of the bedrooms. Potts stated that he eventually had gone to the bedroom, and Shelton had asked him to leave his home. Potts told the jury he had taken a nonthreatening step toward Shelton, and thereafter Shelton had "charged" him and cut his hand. Potts explained that he had become angry and "it came to [his] mind that [his] life was being threatened," so he shot Shelton. He further stated that Shelton got up after being shot and came toward him. Thereafter, the two men began "tussling" over the knife, and during this altercation, Potts killed Shelton.

¶13. On direct examination, Potts also admitted that he had taken Shelton's car, television, game console, and video games. He testified that he took Shelton's car because he "didn't feel safe" in Shelton's home and "the key was in [his] sight." He stated that he took the television, game console, and games because his fingerprints were on them.

¶14. On cross-examination, Potts admitted that Shelton had told him to leave multiple times. Potts also admitted that he had gotten angry after Shelton cut him, and at that time, Potts had been blocking the entrance to the bedroom. Finally, Potts admitted that he could have gotten up and left the bedroom at any time.

¶15. At the close of the evidence, Potts renewed his motion for a directed verdict and moved for an application of the *Weathersby* rule; both of these motions were denied.[1] The

---

[1] *Weathersby v. State*, 165 Miss 207, 147 So. 481 (1933) ("[W]here the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars

jury was then instructed on first-degree murder, second-degree murder, heat-of-passion manslaughter, and imperfect-self-defense manslaughter. The jury found Potts guilty of first-degree murder and motor-vehicle theft. The trial judge sentenced him to serve a life sentence for first-degree murder and a concurrent, ten-year sentence for motor vehicle theft. Potts filed a motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial, which was denied.

¶16. Potts now appeals, arguing that the trial judge erred by (1) providing additional instructions to the jury, (2) not declaring a mistrial when the jury stated it was deadlocked, and (3) granting and refusing certain jury instructions. Potts further argues that there was insufficient evidence to support his conviction and his conviction was against the overwhelming weight of the evidence.

## ANALYSIS

### I.     The trial judge did not err in answering a question from the jury.

¶17. After roughly three hours of deliberations, the jury sent a note to the trial judge which stated: "What is the next step if we cannot unanimously find that the State has failed to prove all the elements of murder first degree?" The trial judge—with agreement from the State and the defense—questioned the jury foreperson regarding the jury's deliberations. The

___

by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge.").

6

jury foreperson indicated that the jury had reached a unanimous verdict on Count II, motor-vehicle theft, but not Count I, first-degree murder.

¶18.   The following exchange took place between the trial judge and the jury foreperson regarding the first-degree-murder charge:

> THE COURT: All right. Now as it relates to Count I, I have the question here that you sent out, but right now I'm interested in this. As to Count I, during the course of your deliberations, have you taken more than one vote?
>
> MADAM FOREPERSON: Yes, sir.
>
> THE COURT: Okay. And without telling me whether or not whether it's guilty or not guilty or the numeric -- what the breakdown is, during the course of your deliberations, have those numbers progressed to the point that you may reach -- that you've gotten closer to a unanimous verdict?
>
> MADAM FOREPERSON: I can say that we have. The stipulations are --
>
> THE COURT: So it has progressed, the numbers have changed --
>
> MADAM FOREPERSON: Yes, sir.
>
> THE COURT: -- closer toward a unanimous one, one way or the other?
>
> MADAM FOREPERSON: Right. But it's not --
>
> THE COURT: Okay. Now the question I've got for you is this. Do you think further deliberations can result in a unanimous verdict one way or the other on the issue of first degree murder?
>
> MADAM FOREPERSON: On the issue of the first degree charge?
>
> THE COURT: Right.
>
> MADAM FOREPERSON: No, sir.

THE COURT: All right. Thank you. I'm going to ask, if you will, return to the jury room for a moment.

¶19. Following this exchange, the trial judge and counsel for the State and defense discussed how the jury's question should be answered. The State requested a *Sharplin* instruction and further deliberations.[2] The defense opined that further deliberations were not necessary because the jury did not understand how to move past first-degree murder to consider lesser-included offenses. On agreement of both parties, the trial court sent the following response to the jury: "Pursuant to Instruction Number 8, you may not proceed to consider lesser charges unless you unanimously find that the State has failed to prove all of the elements of murder first degree."

---

[2] *Sharplin v. State*, 330 So. 2d 591, 596 (Miss. 1976) (A trial judge may give one of two instructions after learning that a jury cannot reach a unanimous decision. The judge may instruct the jury to "[p]lease continue your deliberations," or the judge may state:

> I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so. Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

¶20. On appeal, Potts contends that the trial judge erred by not declaring a mistrial after he received notice that the jury was deadlocked. We find that the jury foreperson was not speaking as a representative of the jury when she stated further deliberations would not help. Instead, she was simply stating her own opinion in response to the judge's question. Because she was not speaking for the entire jury at the time, this Court finds that the foreperson's statement was not a report of a deadlocked jury.

¶21. Potts further argues that the trial judge erred in answering the jury's question because he gave an additional instruction to the jury. The record reveals that Potts was given a number of opportunities to object to the trial judge's response to the jury question, but he never did. This Court repeatedly has held that a failure to object contemporaneously at trial forfeits an issue on appeal.[3] Because Potts failed to object, we find that he may not raise this issue on appeal.

## II. The trial judge did not err in instructing the jury.

¶22. Potts next argues that the trial judge erred when he (1) granted instruction 8 regarding first-degree murder and the lesser-included offenses; (2) refused instruction D–2 regarding malice aforethought; (3) granted instruction C–6 regarding self-defense; and (4) refused instruction D–10 regarding reasonable doubt. "This Court reviews jury instructions under an abuse of discretion standard."[4] Additionally, the instructions must be read as a whole to

---

[3] *See* **Hall v. State**, 201 So. 3d 425, 428 (Miss. 2016).

[4] **Roby v. State**, 183 So. 3d 857, 872 (Miss. 2016) (citing **Thompson v. State**, 119 So. 3d 1007, 1009 (Miss. 2013)).

determine if the jury was properly instructed.[5] This Court will not reverse if the given instructions "'fairly announce the law of the case and create no injustice.'"[6]

### Instruction 8

¶23. Instruction 8 was an "acquit first" instruction requiring the jury to decide unanimously that the State had failed to prove first-degree murder before considering lesser-included offenses. It also instructed the jury on first-degree murder, second-degree murder, heat-of-passion manslaughter, and imperfect-self-defense manslaughter. On appeal, Potts argues that it was error for the trial judge to include all four crimes in one instruction, and the instruction "caused a misconception of the law." We find that his argument is without merit.

¶24. This Court never has addressed whether the charged offense and all of the lesser-included offenses can be included in the same jury instruction. However, the Court of Appeals has approved an acquit-first jury instruction containing the charged offense of aggravated assault and the lesser-included offense of simple assault.[7] Further, this Court has approved the same "acquit first" language found in instruction 8.[8] Finally, the language in the jury instruction accurately tracked the requisite elements of all the offenses contained in

---

[5] *Id.* (citing *Johnson v. State*, 908 So. 2d 758, 764 (Miss. 2005)).

[6] *Id.* (citing *Johnson*, 908 So. 2d at 764).

[7] *White v. State*, 149 So. 3d 556 (Miss. Ct. App. 2014).

[8] *See Fulgham v. State*, 46 So. 3d 315, 330 (Miss. 2010).

10

the instruction. So we find that the instruction did not misconstrue the law, and it was not error to include the charged offense and all lesser-included offenses in one instruction.

**Instruction D–2**

¶25. Next, Potts argues that the trial judge erred by refusing his proffered instruction defining malice aforethought. We find that this issue is without merit because the definition of malice aforethought was adequately covered in given instruction C–7.[9]

¶26. Jury instruction C–7 defined deliberate design and provided:

> The court instructs the jury that "deliberate design" as it is used in these instructions, means an intent to kill without authority of law, and not being legally justifiable, or legally excusable. "Deliberate" always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. "Design" means to calculate, plan, or contemplate. "Deliberate design" to kill a person may be formed very quickly, and perhaps only moments before the act of killing the person. However, a "deliberate design" can not be formed at the very moment of the fatal act.

¶27. The jury instruction additionally stated that "[t]he Court further instructs the jury that 'deliberate design' and 'malice aforethought' as used in these instructions have the same meaning." This Court has long stated that "'malice aforethought, premeditated design, and deliberate design all mean the same thing,'" and are "'[d]efinitionally . . . synonymous.'"[10]

---

[9] *See* **Baynard v. State**, 47 So. 3d 676, 681 (Miss. 2010) (quoting **Young v. Guild**, 7 So. 2d 251, 259 (Miss. 2009)) ("'While a party is entitled to jury instructions that present his theory of the case, this entitlement is limited; the trial court may refuse an instruction which incorrectly states the law, *is covered fairly elsewhere in the instructions*, or is without foundation in the evidence.'") (emphasis added).

[10] **Tran v. State**, 681 So. 2d 514, 517 (Miss. 1996) (quoting **Windham v. State**, 602 So. 2d 798, 801 (Miss. 1992); **Blanks v. State**, 542 So. 2d 222, 227 (Miss. 1989)).

11

Additionally, this Court has held that "synonymous phrases or interchangeable words may be used in a jury instruction and the jury still be properly instructed."[11] So the trial judge did not err by refusing Potts's instruction because deliberate design was adequately defined in the given instruction.[12]

### *Instruction C–6*

¶28. Potts next argues that the trial judge erred when he granted jury instruction C–6 because it gave a wrongful interpretation of Mississippi's justifiable homicide statute. However, the record reveals that Potts did not object to jury instruction C–6. This Court repeatedly has held that the failure to object contemporaneously to jury instructions at trial "'procedurally bars the issue on appeal.'"[13] Because Potts failed to object to jury instruction C– 6, he is procedurally barred from raising this issue on appeal.

### *Instruction D–10*

¶29. Finally, Potts argues that the trial judge erred when he failed to give his proposed instruction regarding reasonable doubt. But the record reveals this instruction was withdrawn by Potts's attorney because reasonable doubt was adequately covered in other

---

[11] *Lancaster v. State*, 472 So. 2d 363, 366 (Miss 1985) (citing *Erving v. State*, 427 So. 2d 701 (Miss. 1983)).

[12] *See Tran*, 681 So. 2d at 517.

[13] *Wilson v. State*, 194 So. 3d 855, 861 (Miss. 2016) (quoting *Neal v. State*, 15 So. 3d 388, 397 (Miss. 2009)).

instructions. This Court "will not hold the trial court in error for failing to give a withdrawn instruction."[14] So Potts is procedurally barred from raising this issue on appeal.

## II. There was sufficient evidence to convict Potts and the verdict was not against the overwhelming weight of the evidence.

¶30. Potts next argues that the trial court erred when it denied his motion for a directed verdict at the close of the prosecution's case-in-chief and the close of trial. "'This Court reviews a trial court's grant or denial of a motion for a directed verdict *de novo*.'"[15]

¶31. A motion for a directed verdict challenges the legal sufficiency of the evidence presented to the jury.[16] When assessing the legal sufficiency of a conviction, this Court determines "'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[17] We must reverse a conviction "[i]f facts and inferences considered by the Court 'point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.'"[18]

---

[14] *Pitchford v. State*, 45 So. 3d 216, 248 (Miss. 2010).

[15] *Graham v. State*, 185 So. 3d 992, 998 (Miss. 2016) (quoting *Solanki v. Ervin*, 21 So. 3d 552, 556 (Miss. 2009)).

[16] *Id.* (citing *Franklin v. State*, 676 So. 2d 287, 288 (Miss. 1996)).

[17] *Id.* (quoting *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005)).

[18] *Id.* (quoting *Bush*, 895 So. 2d at 843).

¶32. Mississippi Code Section 97-3-19(1)(a) defines first-degree murder as "[t]he killing of a human being without the authority of law by any means or in any manner . . . when done with deliberate design to effect the death of the person killed, or of any human being."[19] Under Mississippi law, deliberate design "connotes an intent to kill."[20] This intent "'may be formed very quickly, and perhaps only moments before the act of consummating the intent.'"[21] Additionally, where the defendant has not expressed his intent, "'the only method by which intent may be proven is by showing the acts of the person involved at the time, and by showing the circumstances surrounding the incident.'"[22]

¶33. "The jury is allowed 'to draw reasonable inferences from facts based on experience and common sense.'"[23] "Further, 'the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.'"[24]

---

[19] Miss. Code Ann. § 97-3-19(1)(a) (Supp. 2016).

[20] *Holliman v. State*, 178 So. 3d 689, 698 (Miss. 2015) (citing *Wilson v. State*, 936 So. 2d 357, 363–64 (Miss. 2006)).

[21] *Id.* (quoting *Jones v. State*, 154 So. 3d 872, 880 (Miss. 2014)).

[22] *Id.* (quoting *Boyd v. State*, 977 So. 2d 329, 335 (Miss. 2008)).

[23] *Bowser v. State*, 182 So. 3d 425, 431 (Miss. 2015) (quoting *Howell v. State*, 860 So. 2d 704, 739 (Miss. 2003)).

[24] *Id.* (quoting *Nicholson v. State*, 523 So. 2d 68, 70 (Miss. 1988)).

¶34.    Viewing the evidence "in the light most favorable to the prosecution," we find that sufficient evidence supported the jury's verdict of first-degree murder.  The evidence presented shows that Potts chose to stay in Shelton's home after being asked to leave numerous times.  Further, Potts went into the bedroom knowing Shelton was uncomfortable and had a knife.  Potts also admitted that he could have left the bedroom at any time.

¶35.    And after shooting Shelton in the back, Potts stayed in the house and continued fighting rather than leaving the home.  A reasonable juror could  conclude that Potts formed the required intent in the moments before he shot and stabbed Shelton eighteen times.  Additionally, after killing Shelton—rather than calling the police—Potts stole  Shelton's television and game console in an effort to remove his fingerprints from the home.  Although Potts testified he was acting in self-defense, the jury was free to disregard his version of events if it thought his testimony was not credible.

¶36.    Potts also argues that the jury's verdict was against the overwhelming weight of the evidence.  When the weight of the evidence is challenged, this Court will not disturb a jury's verdict unless "'it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'"[25] "This occurs only if reasonable men could not have found the defendant guilty based on the evidence when it is viewed in the

---

[25] *Clemons v. State*, 199 So. 3d 670 (Miss. 2016) (citing *Bush*, 895 So. 2d at 844)).

light most favorable to the verdict."[26]  Based on the evidence discussed above, we conclude that Potts's conviction was not against the overwhelming weight of the evidence.

## CONCLUSION

¶37.  The trial judge did not err by answering a question from the jury or in instructing the jury. Further Potts's conviction was supported by sufficient evidence and was not against the overwhelming weight of the evidence. Accordingly, we affirm.

¶38.  **COUNT I: CONVICTION OF MURDER-FIRST DEGREE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.  COUNT II: CONVICTION OF MOTOR VEHICLE THEFT AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THE SENTENCES IMPOSED SHALL RUN CONCURRENTLY WITH EACH OTHER.   ALL TIME SERVED IN PRE-TRIAL DETAINMENT IS CREDITED AGAINST THIS SENTENCE.**

**WALLER, C.J., RANDOLPH, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**

---

[26] ***Cotton v. State***, 144 So. 3d 137, 142–143 (Miss. 2014) (citing ***Bush***, 895 So. 2d at 844).