# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-KA-01018-SCT

*UNDRA PULLIAM a/k/a ANDRE PULLIAM*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/24/2016 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| TRIAL COURT ATTORNEYS: | CHEREKA LAVO WITHERSPOON |
| | BRIAN H. NEELY |
| | KYLE DAVID ROBBINS |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. POWELL, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON KAY HARTMAN |
| DISTRICT ATTORNEY: | JOHN DAVID WEDDLE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/04/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. Undra Pulliam was granted an out-of-time appeal of his 2016 conviction for the sale of crack cocaine. After review of Pulliam's appeal, we find neither his challenge to the weight of the evidence nor his attack on his habitual offender sentence have merit. We affirm Pulliam's conviction and sentence.

**Background Facts and Procedural History**

### I.    Controlled Buy

¶2.    James White, a confidential informant working with North Mississippi Narcotics Unit Agents Chris Brown and Kevin Warren, conducted a controlled purchase of crack cocaine from Pulliam.  At the pre-buy meeting, the agents and White discussed the planned purchase from Pulliam.  They searched White's vehicle for contraband and provided him with $350 to make the purchase.  White was fitted with audio and video recording devices to capture the buy.  Tailed by the agents, White drove to the buy location—a house on Terry Road in Tupelo.  The agents parked two blocks away.

¶3.    A few minutes after entering the house, White left the buy location and called the agents.  They met him a block or two away.  White handed Agent Brown a bag containing crack cocaine, and the two briefly discussed the controlled buy.

### II.    Conviction

¶4.    The State charged Pulliam with the sale, transfer, or distribution of more than two but less than ten grams of crack cocaine in violation of Mississippi Code Section 41-29-139 (Rev. 2018).  Pulliam had been convicted previously of other felony cocaine offenses.  So the day before trial, the State sought an amendment to Pulliam's indictment to charge him as a habitual offender.[1]  *See* Miss. Code Ann. § 99-19-81 (Rev. 2015).[2]

---

[1] This amendment occurred before the Court adopted the Mississippi Rules of Criminal Procedure.  Now, under Rule 14.1(b)(2), if qualifying convictions supporting enhanced punishment are not listed in the indictment, the State must file a formal notice of prior convictions "at least thirty (30) days before trial or entry of a plea of guilty."  Miss. R. Crim. P. 14.1(b)(2).  But when Pulliam's indictment was amended in August 2016, former Uniform Circuit and County Court Rule 7.09 controlled.  Notably, under Rule 7.09, the

2

¶5. The informant, White, died before trial, making him unavailable to testify. The State introduced the video of White's controlled buy. The video and audio showed White entering Pulliam's house. The two shook or slapped hands. And after this, cash money is visible in Pulliam's hand. The video showed Pulliam counting money at a table. A clear, plastic bag of a substance believed to be crack cocaine is visible on the table. Pulliam then, with the money in his left hand, shook or slapped White's hand again. While shaking hands, White moved toward the plastic bag on the table. There is audio of what sounds like plastic being grabbed. When the table is visible again, the baggie is gone.

¶6. At trial, Agent Brown testified about the buy location and video. Agent Brown identified Pulliam. Another law enforcement officer, Beth Smith, had attended high school with Pulliam. She also positively identified him in the video.

¶7. Agent Brown photographed the baggie containing a large white rock. He field tested the substance and determined it was crack cocaine. Alicia Waldrop, a forensic scientist specializing in drug analysis at the Tupelo Crime Lab, also testified. She verified the substance was crack cocaine, weighing 4.95 grams. Pulliam testified in his own defense. He denied exchanging drugs for money with White.

¶8. The jury found Pulliam guilty. The trial judge sentenced him as a habitual offender to twenty years' imprisonment.

indictment could be amended to add habitual offender status at any time. The defendant needed only a fair opportunity to present a defense and not be unfairly surprised. UCCCR 7.09. And Pulliam did not argue at trial or in his out-of-time appeal that he could not defend the habitual offender charge or was unfairly surprised by the amendment.

[2] *See infra* n.5.

### III.    Out-of-Time Appeal

¶9.    Two years later, Pulliam filed a postconviction petition in the trial court seeking an out-of-time appeal.  But the trial judge denied him an out-of-time appeal.  The Court of Appeals reviewed this denial and reversed and remanded for an evidentiary hearing.  ***Pulliam v. State***, 282 So. 3d 734, 737 (Miss. Ct. App. 2018).  It did so based on Pulliam's unrefuted allegation that he had not been advised of his right to appeal.  ***Id.*** at 737.  On remand, on August 17, 2020, a successor trial judge—Judge Kelly L. Mims—heard Pulliam's request,[3] after which he entered an order granting Pulliam thirty days to file an out-of-time appeal.  Pulliam filed the present appeal.

### Discussion

¶10.    In his out-of-time appeal, Pulliam challenges his cocaine sale conviction and his habitual offender sentence.

### I.    Cocaine Sale Conviction

¶11.    Pulliam seeks a new trial, first arguing the jury's guilty verdict was against the weight of the evidence.  As support, Pulliam does not raise any error relating to admission of the video of the purported drug sale.  Instead, he cites the lack of an eyewitness to the sale and the quality of the video.  He also claims improper bolstering by Agent Brown contributed to his guilty verdict.

#### A.    *Weight of the Evidence*

---

[3] By the time of remand, Judge Thomas J. Gardner III had retired, and Judge Kelly L. Mims presided over the hearing.

¶12. When reviewing challenges to the weight of the evidence, this Court views the evidence "in the light most favorable to the verdict." **Little v. State**, 233 So. 3d 288, 292 (Miss. 2017). A guilty verdict will only be disturbed "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." **Id.** (quoting **Lindsey v. State**, 212 So. 3d 44, 45 (Miss. 2017)).

¶13. Viewed in the light most favorable to his guilty verdict, Pulliam's cocaine sale conviction must stand. Because the informant had died before trial, he was unavailable to testify. But Agent Brown did testify. He described the pre-buy meeting where he searched White and his vehicle, provided him with $350 in buy money, and wired him with audio and video equipment. The State also offered the video and still photographs taken from it. The jury watched the video, which showed White's interaction with Pulliam and cash money. The video also captured the two discussing "hard" and "soft," which based on Agent Brown's training and experience meant crack and powder cocaine, respectively. Also prominent in the video is what appears to be a baggie of crack cocaine on the table. The small plastic baggie seen on Pulliam's table was tied in a manner to have what the State described as a "tail" on it. The baggie was gone after the two slapped hands and White began to exit the house. White left the buy site and then met Agent Brown a block away. He turned over the more than two grams of crack cocaine to Agent Brown. Brown photographed the apparent bag of cocaine. And the photo showing the "tail" on the baggie was admitted in evidence and considered by the jury. Two agents identified Pulliam in the

video, and a lab analyst verified the substance submitted to her was 4.95 grams of crack cocaine.

### B. Unpreserved Bolstering Claim

¶14. As part of his weight of the evidence challenge, Pulliam now suggests Agent Brown improperly bolstered this evidence by pitching White as a trusted informant and provided improper opinion testimony by describing what he saw in the video as a drug deal. But Pulliam did not object to Agent Brown's testimony at trial. And "[t]his Court repeatedly has held that a failure to object contemporaneously at trial forfeits an issue on appeal." *Potts v. State*, 233 So. 3d 782, 788 (Miss. 2017) (citing *Hall v. State*, 201 So. 3d 424, 428 (Miss. 2016)). Forfeited error is reviewed for plain error only. And "the Court's decision to utilize plain error is discretionary, not obligatory." *Flynt v. State*, 183 So. 3d 1, 14 (Miss. 2015). Thus, the fact a particular error may have occurred does not mandate plain error analysis. Instead, the doctrine is applied sparingly—"only in situations when 'a defendant's substantive or fundamental rights are affected.'" *Green v. State*, 183 So. 3d 28, 31 (Miss. 2016) (quoting *Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006)). This Court may only appropriately exercise its discretionary review when failure to do so would result in "a manifest miscarriage of justice" or if there is an error that "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *Hall*, 201 So. 3d at 428 (quoting *Brown v. State*, 995 So. 2d 698, 703 (Miss. 2008)).

¶15. We need not delve deep into the informant-bolstering claim or fact-versus-expert-opinion question concerning Agent Brown. First, there was no objection to Agent Brown's

description of the meeting captured in the video. And there is certainly no requirement that Pulliam's attorney object to it. Trial strategy plays a great deal in an attorney's decision whether to object with an eye on excluding testimony. To the extent Pulliam is arguing his attorney was constitutionally deficient for not objecting to the now-complained-of testimony, we note the strong presumption that a lawyer's trial conduct falls within "the wide range of reasonable professional assistance." *Carr v. State*, 873 So. 2d 991, 1003 (Miss. 2004). With respect to this general presumption, this Court has held that an attorney's decision whether to object "'fall[s] within the ambit of trial strategy' and cannot give rise to an ineffective assistance of counsel claim." *Id.* (quoting *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995)).

¶16.     Viewing the circumstances as they existed at the trial, this Court makes "every effort . . . to eliminate the distorting effects of hindsight" and "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington*, 466 U.S. 668, 689, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674 (1984). From opening statement to closing argument, Pulliam's attorney hammered on the State's lack of an eyewitness. Allowing Agent Brown to describe what he saw in the video as a drug deal, then obtaining repeated admissions from him that, in fact, he did not witness the events and saw no drugs or money change hands, certainly lined up with that tactic.

¶17.     Still, the bottom line is that this case presented a classic jury question. And in addition to Agent Brown's testimony, there was indeed a video. What the video actually depicted and the quality or worth of the video was for the jury to decide. *Mujahid v. State*, 324 So. 3d 275, 280 (Miss. 2021). But judging from the guilty verdict, it is obvious the jurors gave great

weight to the video and photos taken from it, which—when viewed in the light most favorable to the guilty verdict—showed a baggie of crack cocaine on the table that White bought with the cash Pulliam was holding in his hand.

¶18. So the verdict is not against the overwhelming weight of the evidence. Nor did Agent Brown's unobjected-to testimony result in a manifest miscarriage of justice or ineffective assistance on Pulliam's lawyer's part. We affirm Pulliam's cocaine sale conviction.

## II. Habitual Offender Status

¶19. Pulliam next argues his two qualifying prior felony cocaine convictions were void, thus making his Section 99-19-81 habitual offender sentence improper.

¶20. The day before trial, the State amended Pulliam's crack cocaine sale indictment to allege he was a habitual offender. The cited predicate convictions were two separate felony cocaine possession convictions from December 1995.[4] For each of those convictions, Pulliam had been sentenced to separate three-year terms in the Mississippi Department of Corrections.

¶21. At his sentencing in this case, the State offered certified copies of these two prior drug convictions—convictions that arose out of separate incidents and occurred at different times. The first qualifying conviction stemmed from Pulliam's November 2, 1994 felony cocaine possession. The second conviction was from a December 8, 1994 felony cocaine possession.

_____

[4] In assessing Pulliam's habitual offender status under Section 99-19-81, the trial judge considered only the two felony cocaine convictions cited in the State's motion to amend indictment to seek habitual offender sentencing. The trial judge decided against considering Pulliam's two other additional prior felony cocaine possession convictions as predicate offenses for habitual offender status because they were not cited in the amended indictment.

Though Pulliam did not object at sentencing to these predicate convictions, he now claims they are void as a matter of law.

### A. Void Versus Voidable Predicate Convictions

¶22. Generally, a habitual offender sentencing hearing is neither the time nor place to collaterally challenge a qualifying prior conviction. As we have explained, "the trial court is not required to go beyond the face of the prior convictions sought to be used in establishing the defendant's status as an habitual offender." *Phillips v. State*, 421 So. 2d 476, 481 (Miss. 1982). So facially valid prior convictions "may be used for the enhancement of the defendant's punishment under the Mississippi habitual offender act." *Id.* For example, in *Phillips*, the defendant argued at sentencing that his prior convictions were constitutionally invalid and voidable because his guilty pleas were involuntary. *Id.* at 481-82. We held that, until those convictions were voided in a separate proceeding directly challenging the voluntariness of his guilty plea, they could support a habitual offender sentence. *Id.*; *see also Hewlett v. State*, 607 So. 2d 1097, 1106 (Miss. 1992). We do however recognize that Pulliam's allegations here are a bit different.

¶23. While *Phillips* dealt with voidable convictions, here Pulliam insists his two prior convictions are not merely voidable but *void* on their face. So if his allegation proves true, unlike the claim in *Phillips*, Pulliam need not have directly challenged his prior convictions in a separate proceeding. If his qualifying convictions are indeed void, they cannot support his habitual offender status. This is why, even though this is a direct appeal of his 2016 conviction, we consider the facial validity of his 1995 convictions.

9

### B. Pulliam's Void Convictions Claim

¶24. The basis for Pulliam's "void" conviction assertion is that he was seventeen when he committed the two cited felony cocaine crimes in November and December 1994. Based on his then young age, he insists the Chickasaw County Circuit Court lacked jurisdiction over him, rendering his 1995 convictions void. In short, he argues his earlier cocaine crimes fell under exclusive jurisdiction of the youth court.

¶25. As support, Pulliam cites Mississippi Code Section 43-21-151 (Rev. 2015). The current version of this statute explains that youth court jurisdiction "shall attach at the time of the offense and shall continue thereafter for that offense until the child's twentieth birthday, unless sooner terminated by order of the youth court." Miss. Code Ann. § 43-21-151(2) (Rev. 2015). But "[t]he youth court shall not have jurisdiction over offenses committed by a child on or after his eighteenth birthday." *Id.* Had the current version of Section 43-21-151 been in effect in 1994, Pulliam would be correct—the youth court would have had exclusive original jurisdiction. And the circuit court's convictions would be void for lack of jurisdiction. But Pulliam's problem is that this version of the statute did not exist when he committed his first two cocaine-based felonies in 1994.

¶26. Instead, back in 1994, Section 43-21-151(2) directed that "[t]he youth court shall not have jurisdiction over offenses committed by a child on or after his eighteenth birthday, *or over offenses committed by a child on or after his seventeenth birthday where such offenses would be a felony if committed by an adult.*" Miss. Code Ann. § 43-21-151(2) (Supp. 1994)

10

(emphasis added). Because Pulliam committed the two qualifying felonies in 1994 after his seventeenth birthday, the circuit court had jurisdiction over him.

¶27. Consequently, his qualifying convictions are not void as a matter of law. Instead, they properly support the trial court's habitual offender finding under Section 99-19-81.

### III. Habitual Offender Sentence

¶28. Pulliam's final assertion is that the trial judge misunderstood his discretion in sentencing. Pulliam suggests the judge "erroneously believed that [he] had no discretion" when he sentenced Pulliam as a habitual offender under Section 99-19-81. The record does not support this.

¶29. What the record does show is that Pulliam asked for leniency at sentencing. And he now takes issue with the trial judge's response—that, "if [he] were so inclined, the [habitual offender] statute d[id] not permit [him] to impose any sentence other than the maximum and to provide that it will not be reduced or suspended . . . ." In short, the judge merely said *if* he was inclined to be lenient, the statute gave him no discretion. And what the judge said was absolutely correct. Under Section 99-19-81, "the trial court, as a matter of state statutory law, had no sentencing discretion."[5] *Clowers v. State*, 522 So. 2d 762, 764 (Miss. 1988).

---

[5] We do note that after Pulliam was sentenced in 2016, Section 99-19-81 was amended. Now, Section 99-19-81 permits a downward deviation from the maximum sentence. Under the newer Section 99-19-81 that went into effect on July 1, 2018, the maximum sentence must be imposed "unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence." Miss. Code Ann. § 99-19-81 (Rev. 2020). Even so, this more lenient version of Section 99-19-81 was not in effect in 2016 and is certainly not retroactive to Pulliam's habitual offender sentence.

11

¶30. This Court in *Clowers* did, however, acknowledge that, in the exceedingly rare circumstances where a mandatory maximum sentence would be constitutionally disproportional, the trial court has the constitutional authority to impose a lesser sentence. *Id.*; *see also Fairley v. State*, 275 So. 3d 1012, 1025 (Miss. 2019) ("*Clowers* explained that it was not establishing a litmus test for proportionality and that 'outside the context of capital punishment, successful challenges to the proportionality of a particular sentence will be exceedingly rare.'" (quoting *Clowers*, 522 So. 2d at 765 (quoting *Solem v. Helm*, 463 U.S. 277, 289-90, 103 S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983)))).

¶31. But here, the trial judge did not say, as Pulliam suggests, that he was actually inclined to be lenient but lacked any authority to impose a lesser sentencing. There is nothing in the record to show the trial judge found this case to be one of those exceedingly rare circumstances in which imposing the mandatory maximum sentence leads to an inference of gross disproportionality. In fact, before the sentencing hearing began, the trial judge warned Pulliam that an enhanced sentence appeared justified based on Pulliam's criminal record—a record that eventually showed four prior felony cocaine offenses.

¶32. Further, Pulliam did not argue at sentencing nor has he shown on appeal that a twenty-year sentence is constitutionally disproportionate. In *Fairley*, this Court held that a similar twenty-year, day for day, habitual offender sentence for drug possession "raise[d] no inference of gross disproportionality." *Fairley*, 275 So. 3d at 1025. And we see no reason such an inference should be raised here. Thus, we affirm Pulliam's twenty-year sentence for

distributing more than two but less than ten grams of crack cocaine as mandated by Section 99-19-81.

¶33. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**