# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01376-COA

**CORDERRO TYCHOSKY SEALES A/K/A**                    **APPELLANT**
**CORDERRO SEALS**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:           11/21/2023
TRIAL JUDGE:                HON. MARK SHELDON DUNCAN
COURT FROM WHICH APPEALED:  NESHOBA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: ZAKIA BUTLER CHAMBERLAIN
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ABBIE EASON KOONCE
DISTRICT ATTORNEY:          STEVEN SIMEON KILGORE
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 01/14/2025
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Corderro Seales was found guilty in the Circuit Court of Neshoba County, Mississippi, of attempted first-degree murder pursuant to Mississippi Code Annotated section 97-1-7(2) (Rev. 2020). He was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020). Seales appeals his conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 11, 2023, Dennis Carter and Donte Patterson were sitting on Carter's front porch drinking and watching videos on Carter's electronic tablet device. As it was getting

dark outside, Carter heard "a lot of tussling and fussing and fighting" going on outside the house immediately next door. Carter identified the people involved in the argument as Felicia Rush, who was the owner of the home, Rush's children, and Seales. Seales was in a relationship with Rush's daughter, Bianca, and he was living in Rush's home at the time of the altercation. Rush testified that the argument started when Seales took a swing at Bianca, who was recovering from injuries recently incurred in a car accident. Rush grabbed Seales and started hitting him on the head with her cell phone. Rush testified that "as [Seales] was jerking away from me, it ripped his shirt because I was pulling on him. I was pulling him trying to keep him from getting at my daughter, but he was still backing up. And he did get away from me."

¶3.     Carter testified that at some point during the altercation between Rush and Seales, he yelled at them to "[c]hill out. Keep it up the hill. Keep it over there." According to Carter, the altercation was moving toward his mother's car parked in his driveway, and he wanted them to stay away from the vehicle. After Seales got away from Rush, Rush told him to not come back, and Seales began to walk down the street. As Seales walked away, Rush heard him say that he was "going to kill this mother f***er." Rush testified that she did not know who Seales was referring to, but as Seales walked past Carter's house, she went inside her own house.

¶4.     According to Rush, Seales was under the influence of drugs on the evening of the incident. She testified that Seales did not use drugs often, but when he did, "he's like a monster." As Seales passed by Carter's house, Carter asked Seales if he wanted to join him

2

and Patterson for a drink on the porch to calm down. Carter testified that he heard Seales say, "[H]e [is] going to learn today," as he paced about in the street. After he passed Carter's house a few times, Seales came back toward Carter's house and rushed toward the front porch where Carter and Patterson were sitting. Seales punched Carter in the ribs and stabbed him in the back five times with a knife. After he stabbed Carter, Seales fled the scene.

¶5. Rush's son heard the commotion at Carter's home and ran inside to tell his mother. Rush immediately ran outside, saw Carter lying in a puddle of blood in his driveway, and called an ambulance. Carter was initially taken to Neshoba General Hospital by ambulance for treatment. Ultimately Carter was airlifted to the University of Mississippi Medical Center (UMC) in Jackson for treatment as a result of the severity of his injuries. Carter sustained two broken ribs and punctured lungs, which collapsed as a result of the stabbing. Carter testified that he received three blood transfusions in his immediate treatment for his injuries: one when he arrived at Neshoba General Hospital, one in the helicopter, and one when he arrived at UMC in Jackson. Carter testified that he remained at UMC for nine days after the stabbing and was approximately twenty percent mobile at the time of his release. Carter stated that he could not get out of bed for almost three weeks and was "totally out of commission for about two full months."

¶6. Seales was indicted for attempted first-degree murder on April 25, 2023. After a one-day trial on November 13, 2023, the jury found Seales guilty as charged, and he was sentenced as a habitual offender to serve twenty-five years in MDOC's custody. Seales filed a "Motion for New Trial or Other Relief," which was denied. Aggrieved by the trial court's

3

ruling, Seales appealed, arguing the evidence was insufficient to support the conviction.

## STANDARD OF REVIEW

¶7.     "When this Court reviews the sufficiency of evidence . . . , we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime." *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017). The issue is not "whether we think the State proved the elements.  Rather, we must decide whether a reasonable juror could rationally say that the State did." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010).

## ANALYSIS

¶8.     Seales' sole argument on appeal is that the evidence presented at trial was insufficient to support his conviction for attempted murder.  Seales claims that the evidence presented to the jury did not show that the act of stabbing, which Seales did accomplish, would have supported first-degree murder.  Seales alleges that "stabbing another person is not an act that, if accomplished[,] would necessarily constitute the offense of first-degree murder."  He concludes that "the stabbing could accurately be deemed an aggravated assault absent the requisite intent to kill."

¶9.     Mississippi Code Annotated section 97-1-7(2) states:

> Every person who shall design and endeavor to commit an act which, if accomplished, would constitute an offense of murder under Section 97-3-19, but shall fail therein, or shall be prevented from committing the same, shall be guilty of attempted murder.

In *Potts v. State*, 233 So. 3d 782, 791 (¶¶32-33) (Miss. 2017), the Mississippi Supreme Court reasoned:

4

Under Mississippi law, deliberate design "connotes an intent to kill." This intent "'may be formed very quickly, and perhaps only moments before the act of consummating the intent.'" Additionally, where the defendant has not expressed his intent, "'the only method by which intent may be proven is by showing the acts of the person involved at the time, and by showing the circumstances surrounding the incident.'" "The jury is allowed 'draw reasonable inferences from facts based on experience and common sense.'" "Further, 'the jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict.'"

(Citations and footnotes omitted).

¶10.   In the case at hand, Seales' intent can first be inferred from his statements leading up to the stabbing. Several witnesses testified as to Seales' statements prior to him stabbing Carter in the back multiple times. Carter testified that after he told Seales to "chill out" and keep his argument with Rush "up the hill," Seales began to pace up and down the street, and Carter heard Seales say, "[H]e [is] going to learn today." Similarly, Rush testified that as Seales was walking down the road after leaving her house, she heard Seales say, "I'm going to kill this mother f***er." Further, after Carter offered for Seales to come up to his porch to have a drink and calm down, Carter heard Seales say "some very vulgar stuff" before Seales rushed toward Carter's porch. According to Patterson, Seales was upset and was "rambling, cussing, [and] hollering" immediately before the stabbing took place.

¶11.   Not only could Seales' intent be inferred by his prior statements, but Seales' actions and the result of his actions also go to show what Seales intended on the night of the attack. Carter testified that he believed that Seales was trying to kill him and that as a result of Seales' actions, he almost died. Patterson testified that Carter "was hurt pretty bad. He lost a lot of blood, you know, stabs to his back numerous times." Finally, Shea Elliot, an

5

investigator with the Philadelphia Police Department who responded to the call at Carter's house that night, testified that "[Carter] was real cold to the touch and kind of fading in and out, real clammy, and his eyes . . . . [H]is pupils were [dilated] as well. They were big. . . . I was very concerned he was going to die. . . . [H]e was constantly saying he couldn't breathe." According to Elliot, Carter had five stab wounds in his upper back, and each wound was about three to four inches long and "kind of gaped open, very distinct." Carter testified to the severity of his injuries and the life-saving medical treatment he received as a result of his injuries. The testimony at trial as to both Seales' statements and actions on January 11, 2023, was sufficient to support Seales' conviction.

## CONCLUSION

¶12. After reviewing the record in this matter, we find that the evidence was legally sufficient to support Seales' conviction of attempted first-degree murder. Therefore, Seales' conviction and sentence are affirmed.

¶13. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND WEDDLE, JJ., CONCUR. ST. PÉ, J., NOT PARTICIPATING.**

6